***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** MOTIONS
The issues raised in plaintiff's Motion to Compel, filed on 16 January 2002, are ruled upon in this Opinion and Award in accordance with the applicable law.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Key Risk Management Services as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on 17 January 1997, as a result of which defendant filed a Form 63 with the Commission. Defendant paid temporary total disability benefits to plaintiff from 7 January 1998 through 3 March 1999.
5. Plaintiff's average weekly wage was $370.00, which yields a compensation rate of $246.68 per week.
6. The parties stipulated to the medical records of Dr. Alfred Geissele, Dr. Robert Hart, Dr. Bruce Hilton, Dr. Maurice Horton, Dr. Bruce Schmitt, Dr. Richard Young, Dr. Robert Allen, Dr. Mark Rodger, Dr. Toni Harris, Dr. Susan Torres, Dr. Hans Hansen, Sampson Regional Medical Center, New Hanover Regional Medical Center, Pro-Active Therapy, Frye Regional Medical Center, Catawba Memorial Hospital, HealthSouth Rehab, Dr. Agapito Fajardo, National Diagnostics, Inc, and Berkley Care Network.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 50 years old. She had worked as a hairdresser, at a cotton mill, at a cardboard box plant, and as a sewer at two furniture plants. Plaintiff began working for defendant-employer in their Hickory, North Carolina plant, as a furniture cover sewer, where her duties included dragging 50 pound packages from the truck, sewing and turning the cushion covers, stuffing the covers with foam, operating a sewing machine, standing, and walking to move product in and out of her work area.
2. On 17 January 1997 at approximately 5:00 p.m., plaintiff was reporting to work when she slipped on ice in the parking lot. She landed on her tailbone, jammed her right arm, cut her right hand, and hurt her neck and low back. Plaintiff also had pain radiating into her right leg. She timely reported the injury to her employer.
3. Defendant-employer referred plaintiff to Dr. Robert W. Hart, III, for complaints of neck pain and of low back pain, which radiated into her right leg. Plaintiff did not report any pain in her right shoulder or right shoulder blade at this time, nor did she indicate that she had pain radiating down her right arm. An x-ray was taken of plaintiff's lower back, but not of her cervical spine. The x-ray showed degenerative disk disease at L4-5 and L5-S1. Dr. Hart diagnosed plaintiff with acute low back strain, mild cervical strain, and a contusion to the right palm. Plaintiff was provided with medication and returned to work. She was placed on light duty with no lifting, bending or twisting. Dr. Hart released plaintiff from his treatment on 25 February 1997, and he referred plaintiff to Bruce A. Hilton, D.C., for chiropractic treatment.
4. Plaintiff left her job with defendant-employer in May 1997, after she married and moved to Wilmington, North Carolina.
5. Once in Wilmington, plaintiff continued to take the medication prescribed by Dr. Hart. Gradually, plaintiff's left leg symptoms and low back and right hip pain increased and she sought chiropractic adjustments on her own, starting on 22 August 1997. Plaintiff continued chiropractic treatment through September 1997, with some improvement in her condition.
6. Plaintiff worked part-time for Whisper Knits in Clinton, North Carolina, from 20 October 1997 to 8 November 1997. Her duties involved sewing shirts, which were substantially easier than the sewing she performed for defendant. Plaintiff never worked full time for Whisper Knits due to their workload. She terminated her employment after her neck and arm pain increased.
7. On 25 November 1997, defendant authorized plaintiff to receive treatment with Dr. Richard C. Young of Clinton Orthopaedic Clinic. Dr. Young found plaintiff to have discogenic disease of the lumbar and cervical spine, possibly aggravated by her fall in January 1997.
8. On 15 December 1997, defendant referred plaintiff to Dr. Robert L. Allen of Raleigh Neurosurgical Clinic for an evaluation of her neck and low back. Dr. Allen found plaintiff's low back condition was due to degenerative lumbar disc disease. Physical therapy was recommended, and although Dr. Allen opined that plaintiff should continue working, he noted that some modifications in her job duties may be necessary.
9. Rehabilitation Nurse Frances Nichols referred plaintiff for treatment at Coastal Orthopaedics in Wilmington, North Carolina, where Dr. R. Mark Rodger saw her on 19 February 1998. Dr. Rodger diagnosed plaintiff with degenerative disc disease of the lumbar and cervical spine, and he treated these conditions until 30 October 1998. He also referred plaintiff to Dr. Toni Harris for pain management treatment on 1 May 1998. Dr. Rodger did not consider plaintiff to be a candidate for surgery at the time he ended his treatment on 30 October 1998. He reported that plaintiff had reached maximum medical improvement and assigned a 5% permanent partial disability rating to plaintiff's spine.
10. On 8 December 1998, Dr. Rodger reviewed and approved a job description for a sedentary position as a sewer with defendant at the Hickory plant. Plaintiff did not return to the approved job because she had moved from the Hickory area and had been living in the Wilmington area since May 1997. The Full Commission finds that because of the distance plaintiff lived from the proposed employment, plaintiff's refusal of the position was justified.
11. In late December 1998 or January 1999, plaintiff moved to Statesville, North Carolina, and on 18 January 1999, defendant filed a Form 24 Application to Terminate or Suspend Payment of Compensation with the Industrial Commission on grounds that plaintiff had refused suitable employment. Following a telephonic hearing before a Special Deputy Commissioner, defendant was authorized to suspend payment of compensation to plaintiff from 8 December 1998 until plaintiff ceased to refuse the work tendered by defendant or until plaintiff could show the refusal to be justified. Although defendant relied on the sedentary job which the rehabilitation nurse took to Dr. Rodger as a basis for the Form 24 Application, the job was never formally offered to plaintiff after she moved from the Wilmington area to Statesville. Therefore, the Form 24 was improvidently approved.
12. On or about 24 March 1999, plaintiff filed a Motion to change her treating physician from Dr. Rodger to Dr. Alfred Geissele, as she had moved from Wilmington to Statesville. By Order filed on 24 March 1999, Deputy Commissioner Kim Cramer authorized plaintiff to seek treatment from Dr. Geissele, and ordered defendant to bear the costs of "any reasonably necessary evaluation and treatment for plaintiff by Dr. Geissele."
13. Prior to 15 April 1999, plaintiff moved to Spartanburg, South Carolina. On 15 April 1999, orthopedic surgeon Dr. Alfred Geissele examined plaintiff for her history of neck and back pain since the 1997 fall at work. He diagnosed plaintiff with degenerative lumbar disk disease with low back pain, right L4-5 protrusion, lumbar radiculitis, right lower leg pain, and cervical spondylosis with neck and right arm symptoms. Dr. Geissele subsequently performed a two level fusion at L4-5 and L5-S1 on or about 4 August 1999.
14. Dr. Geissele is of the opinion that plaintiff has been unable to work from 15 April 1999 and continuing, and that plaintiff has not yet reached maximum medical improvement. Greater weight is given to the opinions of Dr. Geissele over those of Dr. Rogers on plaintiff's disability and when she reached maximum medical improvement.
15. Although plaintiff presented no evidence that she looked for suitable employment following her justifiable refusal to accept the sewer position, the medical evidence provided by Dr. Geissele is sufficient to show that plaintiff was disabled during this period.
16. Dr. Hart opined that he could not relate plaintiff's later cervical complaints to the compensable fall. However, he also indicated that plaintiff's back surgery would be causally related to the compensable fall if plaintiff had nerve root compression and/or loss of motor functions, neurologic pain, or continued pain. Further, the greater weight of the competent medical evidence in the record from both Dr. Rodger and Dr. Geissele relate plaintiff's back condition and her right leg pain to the compensable fall. Accordingly, the Full Commission finds that plaintiff's back condition was causally related to her 17 January 1997 compensable fall at work.
17. The 24 March 1999 Order of Deputy Commissioner Cramer authorizing Dr. Geissele as plaintiff's treating physician did not specify what treatment was approved for plaintiff, and at that time, defendant denied that plaintiff's cervical condition was related to her compensable injury. The Full Commission notes that on the Form 18 "Notice of Accident to Employer" filed by plaintiff on 22 December 1997, plaintiff stated that the extent of her injuries included "disc injury at C5-6 level and C3-4 through C6-7, also L4-5 and L5-S1." On the Form 63 "Notice to Employee of Payment of Compensation Without Prejudice" filed by defendant on 13 April 1998, defendant stated that plaintiff's claim for "the injury on 17 January 1997" was being paid without prejudice to defendant's right to contest liability following an investigation. The Form 63 goes on to state that a lack of action on the part of defendant could operate to waive any right to contest plaintiff's claim. Defendant did not file a Form 61 or in any other manner dispute plaintiff's claim of cervical injury as stated in the Form 18. Therefore, defendant's denial of the cervical portion of plaintiff's injuries was not justified.
18. On or about 5 October 1999, plaintiff's counsel wrote to Deputy Commissioner Cramer regarding the payment of the medical bills. On 11 October 1999, Deputy Commissioner Cramer filed a second Order directing defendant to pay for "all reasonably necessary evaluation and treatment of plaintiff's work-related injuries by Dr. Geissele." Again, the Order did not specify that plaintiff's cervical condition was included as part of "plaintiff's work-related injuries," and defendant continued to deny the compensability of treatment related to this condition. Again, based upon the information contained in plaintiff's Form 18 and defendant's failure to deny liability for those enumerated injuries, defendant's denial of the treatment of plaintiff's cervical injuries was not justified.
19. The Full Commission gives greater weight to the expert medical opinion of Dr. Geissele, and finds that plaintiff's cervical condition is causally related to her 17 January 1997 compensable injury by accident.
20. Based on the greater weight of the evidence, plaintiff has continued to be temporarily totally disabled from earning wages since 8 November 1997, as a result of the injuries plaintiff sustained from her admittedly compensable fall on 17 January 1997.
21. Because defendant had prevailed at a Form 24 hearing before the Commission, and there was a reasonable question as to plaintiff's ongoing disability status, the Full Commission finds that defendant's defense of plaintiff's claim was justified and does not constitute unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $246.68 per week for the period from 8 November 1997 and continuing. N.C. Gen. Stat. § 97-29. Defendant is entitled to a credit for benefits already paid to plaintiff for the period from 19 February 1998 through 3 March 1999.
2. Plaintiff's cervical condition is causally related to plaintiff's admittedly compensable 17 January 1997 injury by accident, and thus is compensable under the Act. N.C. Gen. Stat. § 97-2.
3. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of her compensable injuries as may be required to provide relief, effect a cure or lessen the period of disability, including the treatment by Dr. Geissele and any treatment recommended by Dr. Geissele, HealthSouth Surgery Center, Western Piedmont Anesthesia and Catawba Memorial Hospital. N.C. Gen. Stat. § 97-2(19).
4. Because defendant's denial of payment for plaintiff's treatment for her cervical injuries was not justified and payment of those medical bills did not occur within 60 days after the Orders of Deputy Commissioner Cramer to pay said bills, Dr. Geissele is entitled to a penalty in the amount of 10% of those bills to be paid by defendant. N.C. Gen. Stat. § 97-18(i). Further, plaintiff is entitled to interest on the outstanding medical bills pursuant to N.C. Gen. Stat. § 97-86.2.See Childress v. Trion, 125 N.C. App. 588, 481 S.E.2d 697 (1997).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $246.68 per week for the period from 8 November 1997 and continuing. Defendant is entitled to a credit for benefits already paid to plaintiff for the period from 19 February 1998 through 3 March 1999. As much of said compensation as has accrued shall be paid in a lump sum, subject to attorney's fees approved below.
2. A reasonable attorney's fee of 25% of the accrued compensation awarded to plaintiff in Paragraph 1 above is hereby approved and shall be paid directly to plaintiff's counsel by defendant. Pursuant to an agreement between the parties, no attorney's fee shall be deducted from ongoing benefits.
3. Defendant shall pay medical expenses incurred or to be incurred in the future when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendant shall pay directly to Dr. Geissele an award in the amount of 10% of all medical bills related to plaintiff's treatment which were not paid within 60 days of Deputy Commissioner Cramer's Orders of 24 March 1999 and 11 October 1999. Defendant shall also pay directly to plaintiff interest in the amount of 8% of the medical bills of Dr. Geissele related to plaintiff's treatment which were not paid within 60 days of Deputy Commissioner Cramer's Orders of 24 March 1999 and 11 October 1999. Neither of these amounts are subject to attorney's fees.
5. As plaintiff has not reached maximum medical improvement, this Opinion does not address the issue of permanent partial disability. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
6. Defendant shall pay the costs.
This the ___ day of March, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER